**Aline HALYE, Plaintiff,**

v.

**The LAMSON & SESSIONS COMPANY, et al., Defendants.**

**No. 1:89CV1229.**

United States District Court, N.D. Ohio, E.D.

Oct. 23, 1990.

James F. Koehler, John F. Hill, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for plaintiff.

John W. Edwards, II, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

The plaintiff, Aline Halye[1], brings this suit against The Lamson & Sessions Company, Russel B. Every, Gene F. Budd, and John B. Schulze ("the defendants") based on Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Halye also brings a state law claim based on negligent misrepresentation. The defendants have moved for dismissal of the complaint. For the reasons stated, the defendants' motion is granted.

### I.

The facts alleged are as follows. Halye purchased 200 shares of the common stock of The Lamson & Sessions Company ("Lamson") on June 16, 1989, at $12\frac{3}{8}$ per share. Lamson manufactures industrial/construction products and transportation equipment products. Lamson has issued more than 10 million shares of common stock, which shares are listed and traded on the New York Stock Exchange (NYSE), and also on the Midwest Stock Exchange.

---

1. Halye also makes class allegations in the complaint. However, no motion pursuant to Federal Rule of Civil Procedure 23 to certify a class has been filed.

Defendant Russel B. Every is chairman of the board of Lamson and has been a director since 1979. Defendant John Schulze is the president and chief executive officer of Lamson and has been a director since 1984. Defendant Gene F. Budd is senior vice president of finance, and administration.

In November 1986, Lamson acquired the Carlon division of TBG, Incorporated, all of the stock of Thyrocon Controls and all the assets and liabilities of Thyrocon Controls. Carlon was a manufacturer of thermoplastic and fluid drainage products.

Lamson's financial condition improved as a result of the purchase of Carlon and net earnings per share rose in 1987 and 1988 as did net sales.

Lamson, in its Form 10–K filed with the Securities Exchange Commission ("SEC") on March 21, 1989, for the fiscal year ended December 31, 1988, stated:

> During the period from November, 1986 though 1988, the composition of the Company's businesses as well as its financial structure changed significantly. Most notably, on November 26, 1986, the Company completed the acquisition of substantially all of the assets and liabilities of Carlon. Principally because of this acquisition, the sales during 1988 remained approximately triple the 1986 level and earnings from continuing operations before income taxes and cumulative effect of change in accounting have dramatically improved from a 1986 loss of $2 million to the 1988 record of $32 million.

The market price of Lamson common stock rose in 1987 and 1988.

In the first quarter of 1989, Lamson's operating margins declined to 22.4% from the 22.9% level achieved in 1988. Lamson, in its Form 10–Q, filed with the SEC on May 4, 1989, attributed the decrease to reduced margins for the industrial/construction products as a result of greater availability of resin [2] and to lower customer demand.

Despite this reduction, on April 25, 1989, the Dow Jones News Service reported that Schulze told Dow Jones that Lamson "doesn't quarrel with analyst estimates [for 1989] in the areas of $1.50 to $1.60 a share, fully diluted", which is approximately what the company would have earned in 1988 on a fully taxed basis. Halye alleges that Schulze made the previous statement knowing it to be false. The article also stated that Schulze declined to specifically forecast earnings, but did state that Lamson is "counting on new products to offset a weaker construction market in 1989, maintaining pre-tax profits at approximately 1988 levels."

In April 25, 1989, Every sold more than 48,000 shares of Lamson common stock. Budd, after April 25, 1989, sold 4,700 shares for $14.75 per share which represented 98% of his holdings.

On June 22, 1989, the Dow Jones News Service reported that Lamson had suddenly reversed its position on the analysts' estimate for 1989 and that the company now believed that the estimates were too high. Lamson attributed its change in its position to the construction slump which had reduced demand for Lamson's thermoplastic electric construction products. On June 23, 1989, the Wall Street Journal reported that Schulze now "said it's impossible to predict profits for the year because the company doesn't know how much improvement there will be in conduit profit margins the second half." Following the June 22 announcement, the price of Lamson's common stock declined to $11.25 per share, from its April/May price of $14–$15.50 per share, and from Halye's purchase price of $12⅝ per share.

Halye alleges that the defendant had a duty to disclose that they knew that the analysts' estimate were overly optimistic.

## II.

In reviewing a motion to dismiss complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and

---

**2.** Resin is one of Lamson's principal raw materials.

permissible inferences therein. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The complaint is only to be dismissed if the plaintiff could prove no set of facts in support of his claim which entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).

### III.

■ Section 10 of the Act granted the S.E.C. the authority to establish regulations "to protect investors against manipulation of stock prices." *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 982, 99 L.Ed.2d 194 (1988). Pursuant to this authority, the S.E.C. promulgated Rule 10b(5) which provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national security exchange, ...

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.... In connection with the purchase or sale of any security.

C.F.R. 240.10b–5 (1990).

Five essential elements are necessary to state a claim under Rule 10b(5):

(1) the plaintiff must be an actual purchaser or seller;

(2) the defendant must have violated a duty imposed by the rule;

(3) the defendant must have intended to deceive, manipulate or defraud ("scienter");

(4) the misrepresentation or omission must have been material; and

(5) the plaintiff must have relied on the statement.

*McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 336 (N.D.Ill.1982) (citations omitted).

■ The motion to dismiss presents no issue as to either Halye's standing or the defendants' duty. It is clear that Halye, as an actual purchaser of the stock, is entitled to maintain this suit. *See, Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Additionally, public statements voluntarily made by a corporation which are "reasonably calculated to influence the investing public, ... may not be 'false or misleading or ... so incomplete as to mislead.' " *Greenfield v. Heublein, Inc.,* 742 F.2d 751, 758 (3rd.Cir.1984) (citing *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 862 (2nd Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). Thus, the defendants had a duty not to make misleading statements to the press.

Also not currently contested are the allegations relating to reliance. A presumption of reliance is raised when the plaintiff alleges that (1) the defendant made public misrepresentations; (2) the misrepresentations were material; (3) the shares were traded on an efficient market; and (4) the shares were traded between the time that the misrepresentations were made and the truth was exposed. *Basic,* 108 S.Ct. at 992 n. 27.

The defendants, however, argue that the complaint fails to plead either the requisite scienter or materiality.

Section 10b proscribes only knowing or intentional misconduct and does not prohibit negligent conduct. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Sixth Circuit has held that while negligent conduct is not actionable, conduct which is reckless is. *Auslender v. Energy Management Corp.,* 832 F.2d 354, 356 (6th Cir.1987) (citing *Mansbach v. Prescott, Ball and Turben,* 598 F.2d 1017, 1023 (6th Cir.1979)). Scienter may be alleged generally. *Auslender,* 832 F.2d at 356.

■ As to scienter, Halye claims that the defendants were either aware or should have known of the misleading nature of the

statement made to Dow Jones in April and the omitted relevant information about the decline in the construction market. Halye relies on the fact that defendant Every and Budd sold stock during the class period and insider trading is indicative of materiality. In addition, the Company filed a 10–Q form with the SEC on May 4, 1989, which indicated that Lamson's operating margins had declined due to the greater availability of resin and lower customer demand. These allegations suggest that the defendants at best were reckless in making the April statement and at worse knew or intended to influence the investing public.

It is clear, that if the above facts are proven, a jury could find beyond a preponderance of the evidence that the defendants were reckless and this is sufficient to withstand a motion to dismiss.

■ However, Halye's complaint fails to adequately plead a misstatement of a material fact. At issue, is a report on the Dow Jones News Wire of an interview with Schulze, president and chief executive officer of Lamson. The article in part states:

> Lamson ... is *counting on new products to offset a weaker construction market in 1989*, maintaining pre-tax profits at approximately 1988 levels, John B. Schulze, president and chief executive officer, told Dow Jones.
>
> *Net income* of the producer of plastic products, truck frames and specialized fasteners *will decline* from last year's $26.9 million, per $2.08 a share fully diluted, because last year's earnings were partially sheltered from taxes, he said. The Company exhausted its tax loss carryforwards and accumulated investment tax credits during 1988, placing the company on a fully taxed basis for 1989.
>
> *Schulze declined to make a specific earnings forecast, but he said the company doesn't quarrel with analyst estimates in the areas of $1.50 to $1.69 a share, fully* diluted, which is approximately what the company would have earned in 1988 on a fully taxed basis.
>
> Lamson ... recently introduced a number of new plastic products especially for the utility and industrial markets,

Schulze said. In addition, the company is making a greater sales effort on large-diameter plastic pipe. He said those products will *help reduce the impact of lower demand for construction products, a result of the higher interest rates.*

> Barring a major acquisition, *sales* in 1989 *are likely to fall below the $388.2 million of 1988*, Schulze said, partly because of the sale in the 1988 second half of two units that had combined annual sales of about $19 million. In addition, *plastic resin prices may weaken if interest rates don't decline*, he said, *which would reduce the company's dollar volume* even if unit volume held even with a year ago.,
>
> Lamson ... reported first quarter net of $3.4 million, or 26 cents a share, a year earlier. *However, pre-tax profit was virtually flat* at $5,078.00 compared with $5,066,000. Sales declined to $87.3 million from $93 million, reflecting sale of the two units.
>
> The company experienced a seasonal slowdown in demand for construction products in the early months of 1989, Schulze said. A year earlier, demand for plastic products was so strong that there was no noticeable slowdown, he said.
>
> . . . .

Dow Jones News Service 4/23/89.

A statement is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding [whether and on what terms to buy or sell a security]." *Basic*, 108 S.Ct. at 983. "Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Id.* at 988. Insider trading is one indicator of materiality. *Basic*, 108 S.Ct. at 988 n. 18.

Here, Budd and Every sold substantial numbers of shares within weeks of the above new article appearing. Halye argues that that along with Schulze's unqualified acceptance of the analyst's estimates is sufficient to show the falsity of the statement.

The defendants concede that in some circumstances predictions may be actionable but argue that the predictions in the above news report are not. "Whether liability is imposed depends on whether the predictive statement was 'false' when it was made. The answer to this inquiry, however, does not turn on whether the prediction in fact provided to be wrong; instead, falsity is determined by examining the nature of the prediction— with the emphasis on whether the prediction suggested reliability, bespoke caution, was made in good faith, or had a sound factual or historical basis." *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 204 (5th Cir.1988); *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988) (citations omitted).

In *Auslender,* the court found that the allegations the broker falsely represented that the 1981 partnership was on target and this boded well for the 1982 partnership were actionable. The court noted that the above statement was a mistake of a verifiable fact and was sufficiently different from statements regarding "high hopes" to be actionable. *Id.*

The Second Circuit in *Decker v. Massey–Ferguson,* 681 F.2d 111, 117 (1982), found "no actionable allegations of fraud with regard to Massey's 1975 'expectation' of higher sales, which expectation was specifically based on 'forecasts of a higher level of housing states as well as stimulative government programs [which] should permit an upturn for the construction industry as 1976 progresses." The court noted, that with hindsight, the parties now knew that the prediction of a higher level of housing starts was wrong but such a prediction without "more" is not actionable.

In *Goldman v. Belden,* 754 F.2d 1059, 1069 (2nd Cir.1985), the circuit court reversed the district court's dismissal of a complaint. The court found that the multiple statements taken as a whole portrayed a very optimistic picture for the company. The company had failed to disclose the negative factors which it had knowledge of which created a misleading picture.

In *Schwartz v. Novo Industri, A/S,* 658 F.Supp. 795, 798–99 (S.D.N.Y.1987), the court dismissed a 10b–5 claim which was based on a statement in the Wall Street Journal, attributed to the defendant's president, where he predicted 20% to 25% growth. The court found that without more, the statement is nothing more "than a judgment subsequently found to have been overly optimistic. Plaintiff fails to offer as single objective fact to suggest that the prediction was other than an honestly held view based on Novo's considered judgment given the information before it."

Last, in *Wielgos v. Commonwealth Edison Company,* 688 F.Supp. 331 (N.D.Ill. 1988), the court found that statements projecting that completion date and the total costs of its nuclear plants were not actionable. The Court found that the complaint failed to state a claim because such projections were not actionable unless they were made without a reasonable basis or other than in good faith. *Id.* at 338. The court found hat this allegations failed to disclose a lack of good faith.

The disagreement in this case is what is the correct characterization of Schulze's statements to the Dow Jones New Service. Halye would have this Court look only at the statement that he [Schulze] has no quarrel with the analysts predictions. However, Schulze also made cautionary statements suggesting that these figures were dependent on the seasonal slump in the construction market ending and on new products.

This Court is convinced that the statements made by Schulze were optimistic predictions which "bespoke caution" and are similar to those in the above cases where dismissal were upheld. A reasonable investor viewing those could only conclude that strong performance and high yields were dependent on factors which were *disclosed* and which were beyond the company's control. Halye was provided with the relevant information and the with the president's failure to disagree with analyst's optimistic predictions. Schulze actually discussed the downturn in the construction market—the very fact which Halye claims was not disclosed.

This Court finds that the statements, when placed in context, are not actionable because they are predictions which bespeak caution and reveal the underlying contingent factors. Accordingly, Halye's claim based on Rule 10b(5) is dismissed.

### IV.

■ Halye also brings a state claim based on negligent misrepresentation. Jurisdiction in this case is based upon the existence of a federal questions. This Court has jurisdiction over the above state law claims only as they are pendent to the federal causes of action.

Federal courts have the power to exercise pendent jurisdiction where the state and federal claims derive from a common nucleus of facts such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). But "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139; 3A J. Lucas, *Moore's Federal Practice* ¶ 18.07[1.–3] at 18–36–18–43 (2d ed. 1987).

Accordingly, this Court, in its discretion, orders the pendent state claim dismissed without prejudice for lack of a substantial federal claim.

### V.

In conclusion, Halye's claim for a violation of Rule 10b(5) is dismissed for failure to state a claim, and the state law claim is dismissed because the Court declines to exercise its pendent jurisdiction.

IT IS SO ORDERED.