In re UNITED TELECOMMU-
NICATIONS, INC., SECU-
RITIES LITIGATION.

Relates to all Actions

Civ. A. No. 90–2251–0.

United States District Court,
D. Kansas.

Dec. 17, 1991.

Eric C. Sexton, Don R. Lolli, Beckett, Lolli, Bartunek & Beckett, Kansas City, Mo., Stephen D. Ramos, Berger & Montague, Steven M. Steingard, Dianne M. Nast, Kohn, Savett, Klein & Graf, Philadelphia, Pa., Steven J. Toll, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., David Jaroslawicz, Law Offices of David Jaroslawicz, Richard Dannenberg, Lowey, Dannenberg, Bemporad, Brachtl Selinger, P.C., New York City, for plaintiffs.

Arthur L. Liman, Allan Blumstein, Paul, Weiss, Rifkind, Wharton & Garison, Stephen D. Oestreich, Patricia I. Avery, Wolf, Popper, Ross, Wolf & Jones, New York City, for defendant William T. Esrey.

Lawrence Kill, Anderson, Kill, Olick & Oshinsky, P.C., New York City, for defendant Paul H. Henson.

Arthur L. Liman, Allan Blumstein, Paul, Weiss, Rifkind, Wharton & Garison, New York City, for defendant Arthur B. Krause.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, Overland Park, Kan., Brant M. Laue, George E. Feldmiller, Mark S. Foster, Stinson, Mag & Fizzell, Kansas City, Mo., Laura L. Ozenberger, U.S. Sprint, Law Dept., Arthur A. Chaykin, U.S. Sprint Communications Co., Kansas City, Mo., for defendant United Telecommunications, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Plaintiffs in this action allege violations of federal and state securities laws and related common law. They are proceeding individually and on behalf of a purported class consisting of all persons who purchased the common stock of United Telecommunications, Inc., ("United") during the period July 18, 1989 through July 16, 1990. Defendants have moved to dismiss plaintiffs' Amended Consolidated Class Action Complaint and Amended Consolidated De-

rivative Complaint, and defendants oppose plaintiffs' Motion to Certify the Class.

The court, having reviewed the briefs of counsel, and for the reasons set forth below, grants defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint. In light of this ruling, all other issues presently before the court are moot. Accordingly, plaintiffs' Motion to Certify the Class is denied, and the Amended Consolidated Derivative Complaint is dismissed.

*Discussion.*

In their Amended Consolidated Class Action Complaint ("complaint"), plaintiffs contend that defendants issued a series of misleading public statements that were designed to artificially inflate the market price of United common stock, all in violation of the federal securities laws and related state laws. The essence of the complaint is that the defendants painted a rosy picture of United's condition and prospects, while concealing "adverse material information about the business, finances, financial condition, and future financial prospects" of the company. The complaint sets forth the optimistic statements and predictions made by defendants, then lists the reasons plaintiffs believe these statements were misleading. Defendants' motion to dismiss, made pursuant to Federal Rule of Civil Procedure 12(b)(6), seeks dismissal of the complaint for failure to state a claim under section 10(b) and section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), Rule 10b–5, 17 C.F.R. § 240.10b–5, and Fed.R.Civ.Proc. 9(b).

Five essential elements are necessary to state a claim under section 10(b) and Rule 10b–5:

1. The plaintiff must be an actual purchaser or seller;

2. The defendant must have violated a duty imposed by the rule;

3. The defendant must have intended to deceive, manipulate, or defraud ("scienter");

4. The misrepresentation or omission must have been material; and

5. The plaintiff must have relied on the statement.

*Hayle v. Lamson & Sessions Co.,* 752 F.Supp. 822, 825 (N.D.Ohio 1990), *aff'd,* 948 F.2d 1037 (6th Cir.1991); *see Zobrist v. Coal–X, Inc.,* 708 F.2d 1511 (10th Cir.1983). The first and fifth elements are not implicated by the present motion to dismiss. The plaintiffs adequately allege they were purchasers, and a presumption of reliance is supplied by the fraud on the market theory, adopted by the Supreme Court in *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The remaining elements *are* at issue; thus the court must examine the complaint with respect to the elements of duty, materiality, and scienter.

■ Defendants argue that the complaint alleges no more than mismanagement. Plaintiffs contend that defendants' statements about United's sound condition and promising future were misleading because they failed to disclose, *inter alia:*

That US Sprint was overstaffed, particularly with support staff and data processors, yet at the same time, its residential and small business sales force was understaffed, which resulted in its losing market share in those critical market segments[.] (Complaint ¶ 43(b)).

. . . . .

That despite repeated assurances that its billing problems had been remedied or alleviated, US Sprint was experiencing continued billing problems which were delaying collections and causing customer dissatisfaction and loss of business and increased difficulty in generating new client accounts[.] (Complaint ¶ 43(c)).

. . . . .

That US Sprint was suffering from significant problems in controlling [its] sharply increasing expenses ... such that its overhead and other firm financial commitments were escalating more rapidly than planned and were adversely affecting United Telecommunications' actual performance compared to the levels previously internally forecast or planned. (Complaint ¶ 43(d)).

. . . . .

That United Telecommunications had deficient internal controls and management information systems necessary to maintain costs as its operations expanded and could not devote the resources ... needed to maintain its growth rate while at the same time controlling its costs and maintaining or improving its profit margin[.] (Complaint ¶ 45(b).

. . . . .

That the resources devoted by US Sprint to sales and marketing were inadequate to maintain its market share, much less to grow faster than the industry as a whole, and that US Sprint's sales and marketing expenditures were particularly inadequate in the small business and residential market segments[.] (Complaint ¶ 46(a)).

. . . . .

That the heightened importance of marketing put US Sprint at a further competitive disadvantage against AT & T and MCI because US Sprint could not and in fact did not match the dollars devoted by AT & T and MCI to advertising and other marketing techniques[.] (Complaint ¶ 46(d).

. . . . .

That in light of [the allegations of ¶ 46(d) ], the advertising campaign [of US Sprint] ... did not cause Sprint to grow faster than AT & T or MCI[.] (Complaint ¶ 46(e)).

. . . . .

That United Telecommunications' fiscal 1989 financial statements and other quarterly financial statements issued and disseminated during the Class Period overstated net income, assets and net worth by material amounts because of the failure to make timely and appropriate write-downs for outdated or obsolete software and accruals for certain contract disputes[.] (Complaint ¶ 64(a)).

. . . . .

That defendants had caused and were causing United Telecommunications to undergo a substantial realignment of its work force thereby incurring substantial charges associated with the realignment and other contingencies which the financial statements failed to reflect. (Complaint ¶ 64(b)).

. . . . .

That United Telecommunications did in fact lack managerial systems or internal financial or accounting controls adequate for management to monitor, determine or accurately forecast the financial performance of the company, to control its expenditures or evaluate the marketing of its products and services on a timely basis. (Complaint ¶ 65).

Plaintiffs contend these undisclosed "facts" expose the defendants to liability under section 10(b) and Rule 10b–5.

The Supreme Court held in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), that acts of corporate mismanagement do not violate section 10(b) or Rule 10b–5 in the absence of deception, misrepresentation, or nondisclosure. *See Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628 (3rd Cir. 1989). Federal courts have interpreted this holding to preclude federal claims based upon nondisclosure of mismanagement. *E.g., Panter v. Marshall Field & Co.,* 646 F.2d 271, 288 (7th Cir.1981) (shareholder cannot "bootstrap" state law claim into a federal securities action by alleging nondisclosure of culpability), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *accord Craftmatic,* 890 F.2d at 638–39 ("allegations of failure to disclose mismanagement alone do not state a claim under federal securities law"). In *Panter,* plaintiffs alleged that the defendants issued a "stream" of deceptive or misleading statements, and engaged in conduct that amounted to deception. *Panter,* 646 F.2d at 289. The court observed the post *Santa Fe* rule that if

the central thrust of a claim or series of claims arises from acts of corporate mismanagement, the claims are not cognizable under federal law. To hold otherwise would be to eviscerate the obvious purpose of the *Santa Fe* decision, and to permit evasion of that decision by artful legal draftsmanship.

*Id.; accord, e.g., Craftmatic,* 890 F.2d at 638–639; *Steiner v. Shawmut Nat'l Corp.,* 766 F.Supp. 1236, 1243 (D.Conn.1991) ("[f]ailing to disclose possible mismanagement or incompetence does not state a federal securities law claim.") *quoting Haft v. Eastland Fin. Corp.,* 755 F.Supp. 1123, 1131 (D.R.I.1991) (alteration in original); with respect to paragraphs 64(a)–(b), *see also Naye v. Boyd,* 1986 WL 198, *4 (W.D.Wash.1986) (where no dispute that the published financial statements accurately reflected amounts as calculated by [defendant], and gist of plaintiffs' claims was instead that the amounts themselves were not calculated properly, no cognizable federal claim because issues raised concerned only internal corporate mismanagement).

The court finds that to the extent plaintiffs' claims under the federal securities laws are based on paragraphs 43(b), 43(c), 43(d), 45(b), 46(a), 46(d), 46(e), 64(a), 64(b), and 65 of the complaint as listed above, they allege no more than failure to disclose possible mismanagement, and do not support a federal cause of action. Plaintiffs' claims are dismissed to the extent they rely upon these paragraphs.

■ Plaintiffs also claim fraud in the failure of defendants to disclose certain predictive information allegedly known to defendants but undisclosed or recklessly disregarded at the time optimistic public statements were issued. Specifically, plaintiffs allege defendants should have disclosed:

> That the market for United Telecommunications long distance products and services ... had begun to show decreased interest and increased resistance to US Sprint's products and services, such that United Telecommunications' rate of sales growth and profit margins on those products and services were deteriorating and it was likely United Telecommunications could not maintain its prior record of growth in sales and earnings[.] (Complaint ¶ 43(a)).

> That increasing competition was adversely affecting, and would continue to af-

fect, sales, operating expenses and profit margins on the Company's long-distance telecommunications products and services[.] (Complaint ¶ 45(a)).

> That the Company had not and could not in the near and long-term achieve the necessary revenues and profit margins to justify the exercise of the option to acquire the remaining interest in US Sprint and still maintain the growth rate and improved profit margins projected[.] (Complaint ¶ 45(c)).

> That US Sprint's failure or inability to devote sufficient resources to marketing would be especially harmful to its revenues given 40%–50% declines in long distance rates since the breakup of AT & T in 1984, which made it difficult for competitors to obtain additional market share through further price reductions[.] (Complaint ¶ 46(b)).

> That the Company's debt load and maturity schedule had and would continue to have a negative impact upon the Company's financial results and ability to aggressively price and market its long-distance products and services in competition with its financially stronger competitors AT & T and MCI[.] (Complaint ¶ 46(c)).

> That the Company's October 1989 reorganization was unlikely to accomplish the economies and synergies necessary to achieve stated goals, and that substantial personnel cutbacks would be required at substantial financial cost[.] (Complaint ¶ 52(a)).

> That the broad management shift would preoccupy and distract US Sprint and weaken the Company competitively through United Telecommunications' selection of management personnel from parent United Telecommunications to nearly all senior management position [sic] at US Sprint, thus placing in charge

executives principally experienced in operating monopoly local telephone businesses and ill-equipped to compete with such aggressive marketers as MCI and AT & T. (Complaint ¶ 52(b)).

■ The United States Court of Appeals for the Tenth Circuit recently addressed the duty to disclose this kind of subjective analysis, which includes "projections, estimates, opinions, motives, or intentions," or so-called "soft information." *Garcia v. Cordova*, 930 F.2d 826 (10th Cir.1991). The court noted that the circuits have taken various approaches to the general problem of soft information disclosure, and agreed with the Fifth Circuit that whether there is a duty to disclose in a particular case will turn upon "the nature of the undisclosed predictive information and its importance, reliability and investor impact as determined from the facts of each case." *Id.* at 830 (citing *Isquith v. Middle So. Utils., Inc.*, 847 F.2d 186, 206 (5th Cir. 1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). The court may only dismiss the complaint if the omitted predictions "would have been sufficiently speculative and unreliable to be immaterial as a matter of law." *Id.* (quoting *Craftmatic*, 890 F.2d at 644); *see Craftmatic*, 890 F.2d at 641 ("Only when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the ultimate issue of materiality be decided as a matter of law."); *accord Goldman v. Belden*, 754 F.2d 1059, 1067 (2nd Cir.1985). Taking the allegations of the complaint as true, and drawing all inferences in favor of the plaintiffs, the court is unable to conclude that the predictive omissions alleged in this case, if proven, would be immaterial as a matter of law.[1] The court notes that the *Craftmatic* court affirmed dismissal of "failure to predict" allegations similar to those the court declines to dismiss today. *See Craftmatic*, 890 F.2d at 640–44. However, the court is not inclined to give the Tenth Circuit's citation of *Craftmatic* undue weight in light of a clear mandate that the duty to disclose be determined by consideration of all facts and circumstances relating to the nature of the undisclosed information. *See Garcia*, 930 F.2d at 830; *see also TSC Industries v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (materiality depends on whether omitted fact would have significantly altered "total mix" of information available as viewed by reasonable investor); *Isquith*, 847 F.2d at 208 (materiality and adequacy of disclosure are mixed questions of law and fact for the jury); *Alfus v. Pyramid Tech.*, 764 F.Supp. 598, 603 (N.D.Cal.1991) (whether failure to disclose company problems is an omission causing statements to be misleading is a factual determination left to the jury). The court does not have all the facts and circumstances before it on this motion to dismiss, and therefore concludes that, with respect to the alleged misstatements that depend upon defendants' failure to disclose the predictive information in paragraphs 43(a), 45(a), 45(c), 46(b), 46(c), 52(a), and 52(b) of the complaint, the complaint adequately pleads the elements of duty to disclose and materiality to state a claim under the federal securities laws.

■ The remaining element necessary to the 10(b) and 10b–5 claims is scienter. Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting the fraud ... shall be stated with particularity." Fed.R.Civ.Proc. 9(b). The purpose of Rule 9(b) is threefold—"it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *O'Brien v. National Prop. Analysts Partners*, 936 F.2d 674, 676 (2nd Cir.1991). Although Rule 9(b) permits scienter to be averred generally, courts have repeatedly

---

**1.** The court declines defendants' invitation to consider documents outside the complaint to put the alleged misstatements and omissions "in context." Dismissal of a complaint pursuant to Rule 12(b)(6) is a dismissal on the pleadings unless " 'matters outside the complaint are presented to and not excluded by the court ...' in which case 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....' " *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986) (quoting Fed.R.Civ.Proc. 12(b)).

required plaintiffs to plead the factual basis that gives rise to a strong inference of fraudulent intent. *Id.; Kramer v. Time Warner, Inc.*, 937 F.2d 767, 776 (2nd Cir. 1991). "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be taken for license to base claims of fraud on speculation and conclusory allegations.'" *O'Brien*, 936 F.2d at 676 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2nd Cir.1990). In this circuit, Rule 9(b) is read in conjunction with the liberal pleading requirements of Rule 8, *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986), but even under a liberal application of the rules, plaintiffs must still provide some factual support for the conclusions of fraudulent intent. *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991); *Turner & Boisseau, Chtd. v. Marshall Adj. Co.*, 1989 WL 18812, at *2, 1989 U.S.Dist. LEXIS 2089, at *4 (D.Kan.1989) ("[k]nowledge and intent may be averred generally as long as the complaint provides a sufficient factual basis to support an inference of knowledge and intent."); *Steiner v. Shawmut Nat'l Corp.*, 766 F.Supp. 1236, 1243 (D.Conn.1991) (citing *Wexner*, 902 F.2d at 172).

■ The allegations of the complaint do not give rise to an inference of fraudulent intent. As in *Romani*, the complaint contains no factual allegations that would support a reasonable inference that the adverse circumstances existed at the time of the alleged misstatements, and were known and deliberately or recklessly disregarded by the defendants. *See Romani*, 929 F.2d at 878. The complaint lists predictions plaintiffs contend defendants should have made and then disclosed, but fails to plead any factual basis to support an inference that defendants actually held any of these opinions and then deliberately or recklessly failed to disclose them. Rather, plaintiffs assert, "on information and belief," that defendants either knew or must have known of these impending future developments due to their positions in the company and experience in the industry. This is not sufficient to support an inference that the optimistic statements issued by the defendants were anything other than honestly held beliefs based on the information available to the company at the time. *See In re First Chicago Corp. Securities Litigation*, 769 F.Supp. 1444, 1454 (N.D.Ill.1991) (plaintiff must allege some facts that would permit an inference defendants knew of the problems allegedly undisclosed, and that the problems were so "apparent and profound" that defendants' statements of optimism were not made in good faith); *Sinay v. Lamson & Sessions Co.*, 752 F.Supp 828, 833 (N.D.Ohio 1990) (dismissing complaint because plaintiff failed to offer "any factual allegation to show that the prediction was not made in good faith.") (footnote omitted), *aff'd*, 948 F.2d 1037 (6th Cir.1991); *In re Chaus Securities Litigation*, 1990 WL 188921, at *9 (S.D.N.Y.1990) (predictions not actionable because "the complaint states no factual basis to suggest that the defendants knew or should have known that these prophesies were false when made"). Moreover, "[w]here allegations of fraud are ... based only on information and belief, the complaint must set forth the source of the information and the reason for the belief." *Romani*, 929 F.2d at 878. This is true even when the information lies particularly within the defendants' control. *Id.; accord Craftmatic*, 890 F.2d at 645 ("[E]ven under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within the defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based.").

The complaint does not provide a sufficient factual basis to support an inference of the requisite scienter, and it therefore fails to comply with Rule 9(b). The complaint contains no more than conclusory and speculative allegations of what plaintiffs believe the defendants should have predicted and then disclosed. The complaint does not afford a basis for believing the plaintiffs could prove scienter, *see DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990), and although plaintiffs emphasize "the gross

deviation between optimistic assurances and disappointing results," intent cannot be inferred merely from the temporal proximity of the optimistic statements and the announcement of poor economic performance and depressed earnings. *First Chicago Corp.*, 769 F.Supp. at 1455. The complaint describes in detail the undisclosed opinions that plaintiffs allege were or should have been held by defendants, but this does not provide a factual basis to infer a scheme to defraud existed. *See Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32, 38 (D.N.H.1991) ("Allegations in the form of mere conclusions, accusations, or speculation are not sufficient to meet Rule 9(b)'s peculiarity requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed."); *In re First Chicago*, 769 F.Supp. at 1454 ("Conclusory allegations that the defendants knew that their statements were not true or recklessly disregarded whether the statements were true will not satisfy rule 9(b)."). " 'Indeed, there ... must be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects as [public statements] had painted and that the defendants knew, or were reckless in failing to know, this.' " *Steiner*, 766 F.Supp. at 1247 (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2nd Cir.1978)). This conclusion is especially compelling in the absence of any allegations of insider trading or self-dealing. Although the individual defendants each owned substantial holdings of United stock,[2] there is no indication that defendants sold or otherwise transacted in the company's shares either before or after the announcement of disappointing results in the second quarter of 1990, which is the end of the purported class period.

*Conclusion.*

Count I of the Amended Consolidated Class Action Complaint is dismissed for failure to comply with Rule 12(b)(6), as discussed above, without prejudice, and plaintiffs are granted thirty days to file an amended complaint in compliance with Rule 9(b). Counts II, III, and IV of the Class Action Complaint, the pendent state law claims, are dismissed for lack of jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiffs' Motion to Certify the Class, now moot in light of today's ruling, is dismissed without prejudice. The Amended Consolidated Derivative Complaint must also be dismissed at this time because the claims therein are totally dependent on the existence of the class action suit.[3] The court will reserve ruling on all other issues raised in the various motions until such time as the class action may be allowed to proceed. In that event, the court will treat the remaining motions and arguments as renewed unless advised otherwise by counsel, and re-briefing of these issues will not be required.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (Doc.

---

2. The complaint states that the individual defendants own United stock in the following amounts: Esrey, 48,668 shares; Henson, 221,870 shares; Krause, 9,279 shares. The named plaintiffs own a total of 4,600 shares.

3. The derivative complaint contains allegations of fraudulent misrepresentation and omission virtually identical to those in the class action complaint, and claims defendants breached their fiduciary duty to the company and its shareholders by failing to take adequate steps to prevent the alleged fraudulent activity. The complaint seeks damages "to the extent that United Telecommunications is found liable for the damages alleged by the purchasers of its securities" in the class action. This claim is clearly dependent upon the outcome of the class action and therefore properly dismissed until such time as the class action may be allowed to proceed. Plaintiffs contend in their brief that these are not the only damages sought, alleging United has suffered "great damages in that [its] credibility and ability to conduct business has [sic] been brought into question." Plaintiffs also allege the company has been damaged by defendants' "acts of unfair competition against other honest telecommunications companies." These allegations are far too indefinite and speculative to withstand a motion to dismiss. *See In re Symbol Technologies Secs. Lit.*, 762 F.Supp. 510, 517 (E.D.N.Y.1991) (calling this type of language "boilerplate" and finding it insufficient to apprise defendants of the kind of damages being claimed or the extent of those damages).

# 30) is granted, and plaintiffs are granted thirty days to file an amended complaint.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss the Amended Consolidated Derivative Complaint (Doc. # 33) is granted, and the derivative complaint is dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiffs' Motion to Certify the Class (Doc. # 37) is denied without prejudice.