**Lynn SINAY, David Rosenberg (90–4075); and Aline Halye (91–3051), Plaintiffs–Appellants,**

v.

**The LAMSON & SESSIONS COMPANY; Russell Every; John Schulze; and Gene Budd, Defendants–Appellees.**

Nos. 90–4075, 91–3051.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 10, 1991.

Decided Nov. 7, 1991.

Richard S. Wayne (Argued and Briefed), William K. Flynn, Strauss & Troy, Cincinnati, Ohio, Alan L. Melamed, Dinn, Hochman, King & Melamed, Mayfield Heights, Ohio, for Lynn Sinay.

Alan L. Melamed, Dinn, Hochman, King & Melamed, Mayfield Heights, Ohio, for David Rosenberg.

John W. Edwards, II and Mark Herrmann (argued and briefed), Jones, Day, Reavis & Pogue, Cleveland, Ohio, for The Lamson & Sessions Co., John B. Schulze, Russell B. Every and Gene F. Budd.

James F. Koehler (argued and briefed), John F. Hill, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for Aline Halye.

Before GUY and SILER *, Circuit Judges, PECK, Senior Circuit Judge.

SILER, Circuit Judge.

The plaintiffs-appellants [hereinafter "plaintiffs"] in these two securities fraud actions appeal the district court's order granting the motion by the defendants-appellees to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] For the follow-

---

* Honorable Eugene E. Siler, Jr., Chief District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation, became a Circuit Judge on September 16, 1991.

1. The defendants-appellees are The Lamson & Sessions Company [hereinafter "Lamson"]; Russell B. Every [hereinafter "Every"], Chairman of Lamson's Board of Directors; John B.

ing reasons, we affirm the district court's decisions.

The class plaintiffs purchased Lamson common stock sometime between October 24, 1988, and June of 1989.[2] The named plaintiffs purchased their shares on November 1, 1988 (Rosenberg); March 6, 1989 (Sinay); and June 16, 1989 (Halye). In their complaints, the plaintiffs allege securities fraud pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and the Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.-10B–5. Plaintiffs do not assert there was fraud individually upon them because they relied upon statements by defendants when they purchased their shares. Instead, they contend that Lamson and the other defendants engaged in a course of conduct which artificially inflated the common stock's market price (i.e., the plaintiffs assert a "fraud on the market" theory).

Lamson, whose stock is traded on the New York Stock Exchange, manufactures construction and transportation equipment products. In November 1986, Lamson acquired substantially all of the assets and liabilities of the Carlon division of TBG, Inc. [hereinafter "Carlon"],[3] all of the outstanding shares of Thyrocon Controls, and substantially all of the assets and liabilities of Thyrocon Controls' Canadian division. This transaction also apparently included Lamson's acquisition of Midland Steel Products [hereinafter "Midland"], a division of Carlon. Following the November 1986 acquisitions, Lamson's earnings dramatically increased.

On October 24, 1988, Lamson publicly disclosed that its performance during the first three quarters was "gratifying," although it was experiencing a "normal seasonal decline" in its commercial and residential markets which would last "into the

first quarter of 1989."[4] On December 23, 1988, Lamson reported that it was having a "tremendous year." On February 21, 1988, Lamson stated that it was pleased with the 1988 results and that it planned to continue to develop its position in the domestic and worldwide transportation markets. In an April 1989 interview with the Dow Jones News Service, Schulze stated that Lamson "does not quarrel with analysts' earnings estimates for 1989 in the area of $1.50 to $1.60...." Schulze further stated that Lamson was "counting on new products to offset a weaker construction market for 1989."

Notwithstanding the positive forecasts, Lamson's financial condition began to erode in 1989. Due to prolonged higher interest rates, the construction market failed to rebound after the winter slowdown. Moreover, Lamson experienced severe labor problems at its Midland plant. The plaintiffs assert that the defendants knew or should have known that the construction market's decline would be long-term and that a major and devastating strike would occur. Therefore, according to the plaintiffs, the defendants deceived the market by failing to issue sufficient cautionary statements concerning Lamson's future.

I.

Whether the district court properly dismissed the complaint pursuant to Fed. R.Civ.P. 12(b)(6) is a question of law subject to de novo review. Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990). All factual allegations are deemed admitted, Jenkins v. McKeithen, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), and when an allegation is capable of more than one inference, it

---

Schulze [hereinafter "Schulze"], Lamson's president and CEO; and Gene F. Budd, Lamson's Senior Vice President–Finance, Administration and Treasurer.

**2.** The proposed class period for No. 90–4075 is from October 24, 1988, through June 22, 1989. The proposed class period for No. 91–3051 is from April 25, 1989, through June 23, 1989.

The class was not certified because the case was dismissed at an early stage. Moreover, plaintiff in No. 91–3051 did not file a motion for class certification under Fed.R.Civ.P. 23.

**3.** Carlon is a manufacturer of thermoplastic and fluid drainage products.

**4.** The construction market had begun to experience its normal winter slowdown.

must be construed in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

District Judge Ann Aldrich dismissed the cases because:

1. In Rosenberg's case (No. 90–4075), he failed to offer any factual allegation to show that the statements by Lamson and Every on October 24, 1988, were not made in good faith.

2. In Sinay's case (No. 90–4075), although he additionally asserted fraud through a statement by Schulze in the *Wall Street Journal* on February 21, 1989, after Lamson's yearly sales and earnings for 1988 were announced, he failed to show how the statement was misleading as the court found the statements to be true.

3. In Halye's case (No. 91–3051), when she claimed fraud through the Dow Jones News Wire of the interview with Schulze in April 1989, the statement was only an optimistic prediction which "bespoke caution."

 Economic projections are not actionable if they bespeak caution. *Polin v. Conductron Corp.,* 552 F.2d 797, 806 n. 28 (8th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). When a corporation, through its officers or otherwise, states an honestly held view based on the information currently before it, neither it nor its officers may be held liable pursuant to section 10(b) or Rule 10(b)(5). *See Schwartz v. Novo Industri, A/S,* 658 F.Supp. 795, 799 (S.D.N.Y.1987) (holding corporation or officers liable would constitute action for "fraud by hindsight"). In determining whether the statements are actionable, the court must scrutinize the nature of the statement to determine whether the statement was false when made. *See Isquith v. Middle South Utils., Inc.,* 847 F.2d 186, 204 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). While analyzing the nature of the statement, the court must emphasize whether the "prediction suggested reliability, bespoke caution, was made in good faith, or had a sound factual or historical basis." *Id.*

 The questioned statements herein were phrased in sufficient cautionary language. Schulze's statement in the *Wall Street Journal* was couched in cautionary language. Schulze stated that there was a lower demand for construction products due to higher interest rates. Schulze further stated that plastic resin prices might weaken if interest rates did not decline, which would reduce Lamson's dollar volume even if unit volume held even with a year ago. In light of the cautionary language, Schulze's statement that Lamson did not disagree with analysts' earnings estimates is hardly the type of statement that would mislead a reasonable investor.

The statement that Lamson's performance during the third quarter in nine months of 1988 was gratifying is also accompanied by cautionary language. Every stated that Lamson was experiencing some slowdown in the construction markets which was expected to continue into the first quarter of 1988.

In addition, the plaintiffs did not offer any objective evidence that the statements were anything other than honestly held convictions based on the historical information which Lamson possessed. The December 23, 1988, *New York Times* article stating that Lamson "has been having a tremendous year" was a statement of historical fact known to the public. The February 21, 1989, statement that Lamson was pleased with the results in 1988 was a historical fact supplemented with cautionary language. The report states that Lamson "made excellent progress during 1988 in expanding into the electrical, industrial, utility and consumer markets" and the company plan "calls for continued development" in these markets. This language would alert a reasonable investor that Lamson's future was uncertain.

 In the Sinay/Rosenberg case, the labor issue was raised in the original complaint, but was not addressed by Judge Aldrich. In Halye's case, it was not raised except in the motion to amend after dismissal. With respect to the possible labor strike, Lamson was not in any better posi-

tion to predict its occurrence than was the public.[5]

News of the labor problems was widely disseminated in the media, locally in the Cleveland *Plain Dealer* and nationally in the *Wall Street Journal.* There was no duty to divulge anything more for the public about the labor difficulties. The district court should probably have discussed this issue, but no benefit could be derived by remanding this for such an issue to be resolved, as this court finds it does not state a claim upon which relief could be granted.

Lamson and its officers made cautionary predictions based on the limited information available to them. Although certain predictions may be actionable, *see Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985), to impose liability in this situation would unduly restrain management from disseminating useful information to the market. Such a result would not protect investors, but rather would be deleterious to investors because it would prevent the freeflow of information.

It would have been easier for this court had the district court converted the motions to dismiss to motions for summary judgment under Fed.R.Civ.P. 56, so that the plaintiffs could have filed additional materials in the record to counter the many news clippings added to the record by the defendants. However, Rule 56(c) only speaks of adding depositions, answers to interrogatories, admissions and affidavits, not news clippings. In addition, plaintiffs recited in their complaints various quotations by the defendants in news stories.

The district court apparently read the entire articles, such as the one in the Dow Jones News Service. Halye has now raised an objection to that procedure in her brief. However, she raised no objection in the district court to the consideration of that evidence in the motion to dismiss, so the

objection was waived. *See Ward v. United States,* 838 F.2d 182, 187 (6th Cir.1988); Fed.R.Evid. 103(a)(1). Sinay and Rosenberg did not object to consideration of any clippings in their case, so this court does not have to decide whether such consideration of news clippings in No. 90–4075 was erroneous.

Therefore, the district court's Fed. R.Civ.P. 12(b)(6) dismissal of the complaints will be upheld.

## II.

The plaintiffs argue on appeal that the district court erred in not permitting them to amend their complaints. In the district court, Sinay and Rosenberg (No. 90–4075) amended their complaint once pursuant to Fed.R.Civ.P. 15(a) but failed to move the district court for leave to amend following the dismissal. Halye (No. 91–3051), unlike the other plaintiffs, did move the district court, in accordance with Fed.R.Civ.P. 15(a) and 59(e), to amend the order of dismissal to allow her to amend the complaint.[6] However, the district court denied Halye's motions.

 The district court has discretion in determining whether to permit an amendment, and its decision will be overturned only if it has abused that discretion. *See Estes v. Kentucky Utils. Co.,* 636 F.2d 1131, 1133 (6th Cir.1980). Although federal courts are inclined to grant leave to amend following a dismissal order, there are circumstances where amendment will not be allowed. *See United States v. Frank B. Killian Co.,* 269 F.2d 491, 493 (6th Cir.1959); *see also Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986). Accordingly, an amendment may not be allowed if the complaint as amended could not withstand a Fed.R.Civ.P. 12(b)(6) motion. *See Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). Furthermore,

---

**5.** The plaintiffs argument that Lamson knew or should have known that the strike would occur is without merit. Pursuant to 29 U.S.C. § 158(d), both parties to a labor dispute have an obligation to bargain in "good faith." If Lamson had predicted a strike, such projection may have conflicted with its "good faith" duty. Not-

withstanding, Lamson could not have predicted the strike with any certainty.

**6.** Halye also moved the district court pursuant to Fed.R.Civ.P. 59(e) to vacate the order of dismissal.

a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought. *See Carl Sandburg Village Condominium Ass'n v. First Condominium Dev. Co.*, 758 F.2d 203, 206, n. 1 (7th Cir.1985).

■ Halye desired to amend her complaint to allege that Lamson's profits for 1989 were below those predicted. This amendment would not have withstood a Fed.R.Civ.P. 12(b)(6) motion because Halye is only alleging "fraud by hindsight." Furthermore, this court holds, as did the Fifth Circuit in *Isquith*, that the falsity of a statement does not depend on "whether the prediction in fact proved to be wrong...." *Isquith*, 847 F.2d at 203–04. Halye further sought to amend her complaint to allege that Lamson misrepresented certain facts about Midland's labor problems. This amendment would have been futile because Lamson was not, as discussed in part I, in any position to predict a labor strike.

Moreover, with regard to Halye's claim under the labor strike issue, she bought her stock after many public notices were disseminated on the strike in early June. Therefore, the market price of her stock on June 16, 1989, could not have been artificially inflated by concealment of labor unrest, as it was widely known by that time. Sinay's and Rosenberg's claim that the district court should have granted them leave to amend is without merit because they did not seek leave to amend.

### III.

In addition to the federal securities fraud claims, the plaintiffs also assert pendent state law claims for negligent misrepresentation. The plaintiffs argue on appeal that the pendent state law claims should be remanded to the district court because the complaints state claims for federal securities fraud. Pendent state claims may be dismissed if the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Therefore, in light of the Court's holding in part I above,

the district court's dismissal without prejudice of the pendent state claims will be upheld.

Finding no error in the proceedings below, the district court judgments 752 F.Supp. 822 and 752 F.Supp. 828 are AFFIRMED.