Eli BALLAN, Larry Rabinovits, Stephanie Ziemack, Thomas E. Aceto, Jean Giles, Paul Longo, Victoria Shaev, Herman Ratner, Robert Guendelsberger and Ellen Klein, individually and on behalf of all those similarly situated, Plaintiffs,

v.

The UPJOHN COMPANY, Theodore Cooper, Mark Novitch, Ley S. Smith, William U. Parfet, Kenneth M. Cyrus, Ray T. Parfet, Lawrence C. Hoff, and R.C. Salisbury, Defendants.

No. 5:92–CV–9.

United States District Court,
W.D. Michigan, S.D.

Dec. 30, 1992.

Joshua N. Rubin, Abbey & Ellis, New York City, Elwood S. Simon, Elwood S. Simon & Assoc., Bloomfield Hills, MI, Richard S. Schiffrin, Schiffrin & Craig, Chicago, IL, Lester L. Levy, Wolf, Popper, Ross, Wolf & Jones, New York City, Curtis V. Trinko, Curtis V. Trinko Law Office, New York City, Stanley D. Bernstein, Kreindler & Kreindler, New York City, Karen L. Morris, Morris & Morris, Wilmington, DE, for Eli Ballan, Larry Rabinovits, Stephanie Ziemack, Thomas E. Aceto and Jean Giles.

Stanley R. Wolfe, Berger & Montague, PC, Philadelphia, PA, Elwood S. Simon, Bloomfield Hills, MI, Jeffrey Squire, Kaufman Malchman Kaufmann & Kirby, Joseph H. Weiss, New York City, for Herman Ratner, Ellen Klein and Robert Guendelsberger.

George E. Pawlowski, Murray, Pawlowski & Elkins, Grand Rapids, MI, Dianne M. Nast, Steven M. Steingard, Kohn, Nast & Graf, PC, Philadelphia, PA, Harris J. Sklar, Harris J. Sklar Law Offices, Philadelphia, PA, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, for Paul Longo.

William S. Farr, Joel E. Krissoff, John R. Oostema, Farr & Oosterhouse, Grand Rapids, MI, Stuart D. Wechsler, Andrew Davidovits, Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, for Victoria Shaev.

Jasper A. Cragwall, Jr., William K. Holmes, Warner, Norcross & Judd, Grand Rapids, MI, William R. Norfolk, Elizabeth A. O'Connor, James H. Carter, Jr., Sullivan & Cromwell, New York City, for Upjohn Co.

Jasper A. Cragwall, Jr., Devin Sean Schindler, William K. Holmes, Warner, Norcross & Judd, Grand Rapids, MI, William R. Norfolk, Elizabeth A. O'Connor, Sullivan & Cromwell, New York City, for T. Cooper, L.C. Hoff, M. Novitch, William U. Parfet, L.S. Smith, Kenneth M. Cyrus, Ray T. Parfet and R.S. Salisbury.

## OPINION RE DEFENDANTS' MOTION TO DISMISS

HILLMAN, Senior District Judge.

This class action asserts federal securities law violations against the various defendants—the Upjohn Company and its directors and executive officers. The class is yet to be certified. Before the court is defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

According to the complaint, defendants allegedly committed fraud on the stock market. Each of the individual defendants, by reason of his position as a director or executive officer of Upjohn, allegedly aided and abetted in the false and misleading statements issued by Upjohn. In Count I of the complaint, plaintiffs allege securities fraud pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and the

Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.–10b–5.

Count II alleges a violation of § 20 of the Exchange Act. Count III alleges common law fraud and deceit.

The motion to dismiss has been fully and competently briefed. Oral argument was heard on October 26, 1992. The court has carefully considered all the arguments and authorities relied upon by all parties in their briefs. For the reasons that follow, the motion to dismiss is denied with respect to all claims.

## I. BACKGROUND

A. Allegations in the Amended Complaint

When considering a motion to dismiss, the factual allegations in the complaint must be construed as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). What follows is a recitation of the allegations as made in the class action complaint.

Plaintiffs brought this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others who purchased Upjohn securities between January 21, 1989 and January 20, 1992. The amended class action complaint was filed on May 22, 1992. The named plaintiffs allegedly purchased Upjohn's common stock at prices that were inflated by the company's misleading reports about Halcion and by defendants' failure to disclose the side-effects of Halcion.

Defendant Upjohn is a Delaware corporation headquartered in Kalamazoo, Michigan. Upjohn researches, develops, produces, and sells prescription pharmaceuticals, and manufactures non-prescription drugs. Among the pharmaceuticals developed, manufactured, and marketed by Upjohn is the sleeping drug Halcion. Also named as defendants, in addition to Upjohn, are eight individuals who are identified as directors and/or officers of Upjohn. Defendant Dr. Theodore Cooper ("Cooper") was at relevant times Chairman of the Board of Directors and Chief Executive Officer of Upjohn. He formerly was Vice–Chairman of the Board and, prior to that, Executive Vice–President. Defendant Mark Novitch ("Novitch") was at relevant times a director of the Company. Novitch was elected Vice–Chairman of the Board of Directors in 1991. He had previously held the positions of Senior Vice–President for Scientific Administration and Vice–President and Executive Vice–President of the Company. Defendant Ley S. Smith ("Smith") was a director of the Company. In 1991, he became Vice–Chairman of the Board of Directors. He previously served as Executive Vice–President of Upjohn. Defendant William U. Parfet ("W.U. Parfet") served as a director and an Executive Vice–President, and Vice–President for Consumer Products, Healthcare Services and Pharmaceutical Strategic Planning, Vice–President and Treasure. He is currently President of the Company. Defendant Ray T. Parfet ("R.T. Parfet") served in the capacity of a director, and, before that, as Chairman and Chief Executive Officer of the Company. Defendant Lawrence C. Hoff ("Hoff") was a director as well as, at various times, President, Chief Operating Officer and Executive Vice–President. Defendant R.C. Salisbury ("Salisbury") was Senior Vice–President for Finance and Chief Financial Officer of the Company. Finally, Defendant Kenneth M. Cyrus ("Cyrus") was Vice–President, Secretary and General Counsel of the Company. (Complaint at ¶¶ 8–15).

Upjohn began testing Halcion in clinical trials in the early 1970's. It is marketed in more than 90 countries with annual sales of $250 million—$100 million in the United States. Halcion is also known as triazolam, a member of the benzodiazepine family, which includes Valium, Xanax, Dalmane and Restoril. (Complaint at ¶ 28). The plaintiff class is comprised of all persons who purchased Upjohn securities during the period from January 21, 1989, through January 20, 1992. Plaintiffs claim that defendants, pursuant to a common and continuous plan and scheme and conspiracy, and aiding and abetting one another, intentionally or recklessly concealed from regulatory agencies and the public material adverse facts about the side-effects of Halcion. (Complaint at ¶¶ 21, 26). As a result of defendants' misrepresentations and omissions, plaintiffs allege that the market

price of Upjohn securities was inflated to an artificially high level.

Plaintiffs also claim that defendants consistently touted the safety and effectiveness of Halcion despite defendants' awareness of the problems experienced by persons who consumed Halcion. (Complaint at ¶ 27). In one of the earliest experimental tests of Halcion, Upjohn conducted Protocol 321 at Jackson Prison in Michigan in 1972. ·When Upjohn submitted the testing results to the FDA and regulatory agencies in other countries, the company failed to include in the report the fact that almost 70% of the test subjects developed severe psychiatric reactions, including memory loss, depression and paranoia. (Complaint at ¶ 30).

Upjohn allegedly continued with the fraud and obtained approval in 1977 to market the drug in Belgium and the Netherlands at doses of up to 1 milligram. In 1979, the Netherlands, after having received approximately 1,100 reports from doctors citing serious side-effects in patients who took Halcion, banned the drug. At a later time, Upjohn convened a meeting in which twelve independent medical experts were asked to review the Dutch claims about the drug. These experts reported they could find no evidence to support the Dutch fears. The reason, according to the complaint, was that they were given only one doctor's case reports. Plaintiffs allege that Upjohn made no mention of the well-documented reports to the panel of experts. (Complaint at ¶ 32–33).

In 1982, Halcion was licensed for sale in the United States for doses of up to 0.5 milligram. (Complaint at ¶¶ 32–34). The approval was obtained after Upjohn allegedly failed to include information in Protocol 6045, the largest of three critical studies, that 52 percent of the patients in the study were enrolled by Dr. William C. Franklin, a doctor who, according to an FDA investigation, had fabricated patient records or failed to report adverse reactions in several non-Halcion drug studies. When Protocol 9118, another test from the early 1980's, was submitted, 188 patients out of 1,567 disappeared from the records without the explanation required in the reporting of clinical trials. (Complaint at 36–38).

In 1987, French and Italian regulators forced the 0.5 milligram tablet from their markets, and Upjohn then lowered the recommended starting dose from 0.5 milligrams to 0.25 milligrams in the United States. In 1988, Germany decided to block the sale of the 0.5 milligram tablet. (Complaint at ¶ 39).

In addition, according to the complaint, defendants failed to disclose Halcion's known adverse side-effects in Upjohn's Annual Report to Shareholders for the fiscal year ending December 31, 1987, and in its Annual Report filed in March 1989 on Form 10–K for the year of 1988. Defendants stated that "Halcion and Xanax, Micronase led major products in U.S. sales growth, while Xanax, Micronase and Halcion solidified their market-leading positions in the U.S." (Complaint at ¶¶ 40–44).[1] The complaint further alleges that throughout the class period, the directors and officers of Upjohn issued reports on Form 10–K and quarterly reports on Form 10–Q that were false and misleading. In particular, defendants failed to disclose the serious problems with Halcion's side-effects and the incomplete, inaccurate and fraudulent studies touting its safety. (Complaint at ¶¶ 64–65).

The complaint alleges that defendants, for the first time, mentioned in their filing with the SEC in March 1992 that they discovered errors in reporting the data from clinical studies used to support the original approval of Halcion. They also, for the first time, conceded that the problems with Halcion might have an impact on the company. (Complaint at ¶¶ 66–67). However, the company did not concede that the issues related to Halcion might affect its profitability until May 1992 in its Quarterly Report on Form

1. The complaint cites Upjohn's Annual Report (Form 10–K) for the fiscal year ending December 31, 1988, which stated that:

The Company is subject to administrative action by the various regulatory agencies. Such action may include product reclass, seizures of products and other civil and criminal actions. The Company does not consider that any currently pending administrative action against the Company would have a material adverse effect on its operations.

Complaint at ¶ 42.

10–Q for the quarterly period ending March 31, 1992. (Complaint at ¶ 68).

Plaintiffs blame this fraud on the management of Upjohn. Defendants Cooper, Hoff, Salisbury, Novitch, R.T. Parfet, W.U. Parfet, and Smith signed Upjohn's Form 10–K filed in March 1989 for the year of 1988. Defendants Cooper, Salisbury, Hoff, Novitch, R.T. Parfet, W.U. Parfet, and Smith signed Upjohn's Form 10–K filed in March 1990 for the year of 1989. Defendants Cooper, W.U. Parfet, Salisbury, Novitch, and Smith signed Upjohn's Form 10–K filed in April 1991 for the year of 1990. Finally, defendants Salisbury and Cyrus signed the quarterly reports filed in May 1989 and November 1991. (Complaint at ¶ 71).

To sum up plaintiffs' complaint, it is claimed that defendants intentionally or recklessly concealed experimental data indicating a danger of psychotic reactions from Halcion use and misreported to the FDA the results of clinical trials by eliminating references to adverse side-effects of Halcion in their reports. According to plaintiffs, Upjohn should have publicly declared that it had committed culpable acts in obtaining the FDA approval. As a result of Upjohn's belated disclosure of the adverse side-effects of Halcion and the falsified data to drug regulatory agencies, plaintiffs allege that sales of Halcion have fallen dramatically and that the market price of Upjohn stock fell during the class period from a high of $49¼ per share to approximately $40 per share. Plaintiffs have thus suffered damages in an amount to be proved at trial. (Complaint at ¶¶ 73–74).

### B. Standard for Motion to Dismiss

In a motion to dismiss for failure to state a claim under Rule 12(b)(6) and Rule 9(b), the court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief." *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990) (*quoting Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court is also required to view the allegations in the light most favorable to the plaintiffs. *Id.* (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## II. SECURITIES LAW VIOLATIONS

### A. Section 10(b) Liability under a Fraud-on-the-Market Theory

Section 10(b) of the Securities Act of 1934, codified as 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> . . . .
>
> (b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

As section 10(b) is not a self-enforcing provision, Rule 10b–5 was promulgated. It provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly,
>
> . . . .
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240. 10b–5 (1992).

Defendants argue that Count I of the complaint, which asserts violations of section 10(b) and Rule 10b–5 against all defendants, fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). They argue that plaintiffs have failed to allege sufficiently that the alleged nondisclosures were material and that plaintiffs relied on the nondisclosures.

■■■■ The test for materiality for an omitted fact was set forth by the Supreme Court in *TSC Industries Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). "[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Although a plaintiff may establish reliance by demonstrating that he or she individually relied on a material statement, the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), adopted the fraud-on-the-market theory and recognized a rebuttable presumption of reliance arising therefrom. The Court held that five elements exist which a plaintiff must allege and prove in order to satisfy the reliance element of a Rule 10b–5 claim:

(1) That the defendants made public misrepresentations, (2) that the misrepresentations were material, (3) that the stock was traded on an efficient market, (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the stock, and (5) that the plaintiff traded in the stock between the time the misrepresentations were made and the time the truth was revealed.

*Id.* at 248, n. 27, 108 S.Ct. at 992 n. 27 (*quoting Levinson v. Basic Inc.*, 786 F.2d 741, 750 (6th Cir.1986), *vacated and remanded on other grounds*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), *on remand, Levinson v. Basic Inc.*, 871 F.2d 562 (6th Cir. 1989)). *See also Freeman v. Laventhol & Horwath*, 915 F.2d 193, 198 (6th Cir.1990).

In the usual claim under section 10(b), the plaintiff must show individual reliance. However, under the fraud-on-the-market theory, the plaintiff has the benefit of a presumption that he or she relied on the integrity of the stock price established by the market.

The arguments raised by the parties concerning Count I center around the fraud-on-the-market theory. Plaintiffs contend that Upjohn should have told the securities markets about the claimed side-effects of Halcion. Its failure to do so defrauded the securities markets. Defendants deny that they concealed anything from the market. In fact, the market, defendants assert, was well aware of the side-effects of Halcion.[2]

Defendants argue that "[s]ome courts have explained that where the market already knows the allegedly 'withheld' information, the *reliance* element of a securities fraud claim is lacking." (emphasis original) (Defendants' Br. at 6). Defendants cite, *inter alia, In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1104–16 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990), and *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). As both parties discussed the two cases at considerable length during the oral argument on October 26, 1992, they merit a brief discussion by the court.

In *In re Apple Computer*, 886 F.2d at 1112, plaintiffs alleged that Apple did not "fairly and adequately inform the market

2. In their brief on the motion to dismiss, defendants noted that they did not "concede that the 'fraud on the market' is valid, though they recognized that the Sixth Circuit accepted it in *Levinson v. Basic Inc.*, 786 F.2d 741 (6th Cir.1986), *vacated and remanded*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)." (Defendants' Br. at 4–5). Defendants stated that "[s]hould it become necessary, defendants intend to challenge the validity of the fraud on the market theory and

its application to this case on appeal." (Defendants' Br. at 5).

The court is aware that the *Basic* decision has invited some criticism from the legal community. *See* Jonathan R. Macey & Geoffrey P. Miller, *Good Finance, Bad Economics: An Analysis of the Fraud-on-the-Market Theory*, 42 Stan.L.Rev. 1059 (1990). However, as it is the law that currently governs, this court must follow the decision specified in the *Basic* opinion.

about Lisa's [a new computer] prospects." Plaintiffs bought shares in response to some optimistic statements made by Apple, whose stock price soared, reaching a high of almost $63 per share, and then fell to about $17 per share when Apple disclosed news of Lisa's disappointing sales. However, the Ninth Circuit concluded that as the risks and underlying problems were widely publicized in the media, the "defendant's failure to disclose material information may be excused where the information has been made credibly available to the market by other sources." *Id.* at 1115.

It is important to note, however, that the *Apple Computer* court qualified its decision by adding the following:

> We stress the limits of our holding. Scrutiny by the press will not ordinarily excuse the type of unqualified exuberance expressed by Apple and its officers in this case. Even in a fraud on the market case, corporate insiders are not relieved of their duty to disclose material information where that information has received only brief mention in a few poorly-circulated or lightly-regarded publications. The investing public justifiably places heavy reliance on the statements and opinions of corporate insiders.

*Id.* at 1116.

■ Thus, although information may trickle into the market from third-party sources, statements from the company itself, or the absence thereof, may be "viewed by a reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries,* 426 U.S. at 449, 96 S.Ct. at 2132. *See In re Seagate Technology II Sec. Litig.,* 802 F.Supp. 271 (N.D.Cal. 1992) (where the parties' evidence of "what the market knew" consists of competing volumes of contradictory analysts' reports and articles published in the popular press is no defense for "truth on the market.") In the instant case, although the market seemed to be aware of the side-effects of Halcion, plaintiffs allege that the market did not know the true test results, as they were not disclosed until later. Moreover, at this stage of the litigation, I cannot discern whether information concerning the side-effects of Halcion

was credibly made available to the market by other sources.

Defendants also rely on *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1040 (6th Cir.1991), where the Sixth Circuit upheld the district court's dismissal of an action for failure to state a cause of action for securities fraud based on fraud-on-the-market theory. It held:

> Economic projections are not actionable if they bespeak caution. When a corporation, through its officers or otherwise, states an honestly held view based on the information currently before it, neither it nor its officers may be held liable pursuant to section 10(b) or Rule 10b–5.... When analyzing the nature of the statement, the court must emphasize whether the "prediction suggested reliability, bespoke caution, was made in good faith, or had a sound factual or historical basis." (citations omitted).

Reliance, in my judgment, on *Sinay* and *In re Apple* is misplaced because the instant case does not involve a claim for false economic projection. Plaintiffs' claim is a fraudulent scheme on the part of defendants. Rather than faulting defendants for making forward-looking statements, plaintiffs' complaint alleges a failure to disclose material information, as well as falsely reporting to the public and to the FDA that Upjohn had no information that would corroborate the claims of adverse side-effects, when in fact it had such data.

Relying on *Sinay,* defendants further contend that plaintiffs fail to allege that the opinions expressed in Upjohn's statements were not held in good faith. They argue that not a single fact was alleged which would show that Upjohn, the spokespersons, or Dr. Cooper did not in fact believe the truth of everything they said. Defendants argue that Upjohn's statements, according to *Sinay,* were honestly held views since Upjohn never disputed the side-effects. What it did dispute was whether the benefits of the drug outweighed the side-effects of the drug.

As defendants are not charged with giving false projections, there is no need to discuss

at this stage whether Upjohn's statements were honestly held viewpoints.

By the same token, defendants' contention that Upjohn's statements fall under the "soft information" category is not analogous in the instant case. I find that defendants misconceive plaintiffs' claims. Soft information is defined as "statements of subjective analysis or extrapolation, such as opinions, motives, and intentions, or forward looking statements, such as projections, estimates, and forecasts." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 642 (3d Cir.1989). As discussed above, whether Upjohn's public statements were opinions, intentions, or economic projections are not the issue. The core issue is whether information concerning the true risks of Halcion was improperly and wrongfully withheld from the public.

By relying on the cases above, among other cases, defendants reversed the fraud-on-the-market theory and base their arguments on the truth-on-the-market theory. But the truth-on-the-market theory can only be sustained where the corrective statements are shown to have "credibly entered the market." *In re Apple Computer*, 886 F.2d at 1116 (*citing Basic Inc.*, 485 U.S. at 249, 108 S.Ct. at 992)). In *In re Seagate Technology II Sec. Litig.*, *supra*, the district court, which denied defendants' motion for summary judgment, emphasized strict evidentiary standards that defendants must meet in order to prove that the market had become fully aware of an allegedly omitted material from credible sources other than the defendants. In the instant case, I am satisfied that plaintiffs have sufficiently alleged fraud on the market. Whether defendants can present sufficient evidence to establish that the market for Upjohn's common stock was fully aware of all the true risks associated with Halcion is a matter properly left to the trier of fact.

The instant case is still at the early pleading stage. I am satisfied plaintiffs have sufficiently alleged that the market price of Upjohn stock would not have been so inflated but for defendants' wrongful conduct. Plaintiffs' alleged reliance on the market adequately demonstrates a sufficient nexus between defendants' conduct and plaintiffs' in-

jury. As there may exist a triable issue of fact whether the alleged omissions, especially the protocols from Upjohn, were available to the market, I am not persuaded that plaintiffs' allegations would not, if proven, support a claim upon which relief could be granted.

B. Duty to Disclose

Defendants next claim that no Rule 10b–5 claim exists if there is no duty to disclose. *Chiarella v. United States*, 445 U.S. 222, 228–29, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1980). They argue, as the *Sinay* court concluded, a corporation has no duty to inform the public or investors about information already a matter of public knowledge. *Sinay*, 948 F.2d at 1041. Furthermore, "silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc.*, 485 U.S. at 239, 108 S.Ct. at 987. Based on this rationale, defendants argue that "[t]here was no need for Upjohn to disclose what the market already knew about the Halcion controversy." (Defendants' Br. at 23).

However, the instant case is distinguishable from the *Sinay* case. In *Sinay*, news of the labor problems was widely disseminated in the media. On the other hand, according to plaintiffs, the alleged fraud regarding information contained in Protocol 321 and other protocols in this case was not known to the public until after the class purchased its shares of common stock. Furthermore, "even though no duty to make a statement on a particular matter has arisen, once corporate officers undertake to make statements, they are obligated to speak truthfully and to make such additional disclosures as are necessary to avoid rendering the statements made misleading." *In re Par Pharmaceutical, Inc., Sec. Litig.*, 733 F.Supp. 668, 675 (S.D.N.Y.1990) (*quoting SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860–862 (2d Cir. 1968) (en banc), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). *See also Basic Inc.* ("the ever-present duty not to mislead").

■ Plaintiffs allege that defendants' public statements touting Halcion's safety and effectiveness were false and misleading because plaintiffs failed to disclose that impor-

**1384**

tant information concerning Halcion's side-effects was withheld from the FDA and the public. They further allege that failure to disclose had an impact on the price of Upjohn stocks. As a reasonable jury could find that defendants knew certain adverse information when Upjohn issued public statements and having had a duty to disclose that information to investors such as the plaintiffs under section 10(b) and Rule 10b–5, and allegedly having failed to do so, dismissal at this early stage of the litigation would be improper. *See Molecular Technology Corp. v. Valentine,* 925 F.2d 910 (6th Cir.1991) (Evidence created jury questions as to whether attorney who drafted agreement to merge two companies knew the misleading nature of the documents, whether attorney had duty to disclose information to buyers, and whether buyers justifiably relied on alleged misrepresentations and omissions).

C. Loss Causation

Defendants further argue plaintiffs have failed to plead adequately the "loss causation." Defendants's contention echoes their argument of the fraud-on-the-market theory, i.e., the market was already aware of the claims and counterclaims surrounding Halcion and, therefore, the only reasonable inference is that plaintiffs' losses (if there were any) were due to some other variables.

The Second Circuit has ruled that where the complaint alleges a broad-based scheme to defraud, the allegations of actual causation must be in the form of "loss causation" and must assert that the section 10(b) violations caused the claimed economic loss. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 & n. 23 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984); *see also Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57 (2d Cir.1985). "But for" allegations are not sufficient to satisfy the causal connection requirement. "[T]he injury averred must proceed directly from the wrong alleged and must not be attributable to some supervening cause." *Marbury Management Inc. v. Kohn,* 629 F.2d 705, 717 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

In *Bastian v. Petren Resources Corp.,* 892 F.2d 680 (7th Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), the Seventh Circuit upheld a district court's dismissal for failure to state a Rule 10b–5 claim brought by an investor in an oil and gas limited partnership because "[t]he plaintiffs ... were not told that oil and gas partnerships are risk-free. They knew they were assuming a risk that oil prices might drop unexpectedly." *Id.* 892 F.2d at 685. The court held that allegations such as, "I would not have invested in a company but for the defendant's misrepresentation about his competence," did not amount to a proper pleading of loss causation. They must "allege and prove that, but for the defendants' wrongdoing, the plaintiff would not have incurred the harm of which he complains." *Id.* The court further states:

> If the plaintiffs would have lost their investment regardless of the fraud, any award of damages to them would be a windfall.
>
> . . . . .
>
> Defrauders are a bad lot and should be punished, but Rule 10b–5 does not make them insurers against national calamities. If the defendants' oil and gas ventures failed not because of the personal shortcomings that the defendants concealed but because of industry-wide phenomena that destroyed all or most such ventures, then the plaintiffs, given their demonstrated desire to invest in such ventures, lost nothing by reason of the defendants' fraud and have no claim to damages. (citations omitted).

*Id.*

In the instant case, I am satisfied, based on plaintiffs' pleadings, that plaintiffs have stated the loss causation and transaction causation. They have alleged not only that they "would not have purchased Upjohn common stock at the prices they paid, if at all, had they been aware of the misleading nature of defendants' public statements and conduct," (Complaint at ¶ 84), they have also alleged that they would not have suffered the loss absent the misrepresentations in the public statements or documents. They have alleged that due to defendants' intentional

and reckless concealment of true test results from regulatory agencies, Halcion, during the class period, became Upjohn's second biggest sales item. Plaintiffs have further alleged that Upjohn, in the face of charges regarding adverse reactions to Halcion, falsely denied those charges. (Complaint at ¶ 49). Plaintiffs have alleged that Upjohn, when faced with the withdrawal of Halcion from the United Kingdom, falsely stated that there was no scientific or medical evidence that warranted such withdrawal. (Complaint at ¶ 73). Plaintiffs claim to have purchased Upjohn securities at artificially inflated prices and were damaged when the market price of Upjohn stock fell at the end of the class period. (Complaint at ¶¶ 26, 83). *See Miller v. New America High Income Fund,* 755 F.Supp. 1099 (D.Mass.1991) ("Complaint against parties involved in junk bond investment fund was insufficient to state cause of action for fraud absent allegation that defendants' statements or omissions were cause of plaintiffs' injury"). Plaintiffs have alleged that the drop in the value of Upjohn's stock was not due to the approaching patent expiration date of some of the sleeping drugs.

Furthermore, it is a factual determination to be made at a later date that the magnitude of the price change, and the measure of the price change, in the absence of Upjohn's statements, would have remained the same. Plaintiffs have sufficiently alleged the loss causation and transaction causation, and that they were injured because they were unaware of the true risks as a result of defendants' misrepresentations.

For the reasons discussed above, defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is DENIED.

## III. FRAUD CLAIM UNDER FED.R.CIV.P. 9(b)

Fed.R.Civ.P. 9(b) states in relevant part: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To state a claim under section 10(b) and Rule 10(b)(5), the Sixth Circuit has stated that a plaintiff claiming fraud must at a minimum allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988); *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). In addition, in order to plead a violation of section 10(b), plaintiffs must allege that defendants acted intentionally or with scienter. Scienter is an essential element of a securities fraud claim. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976). Allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.

The Sixth Circuit has rejected a strict reading of Rule 9(b). *See Michaels Bldg.,* 848 F.2d at 679–80. As Rule 9(b) must be read "in harmony" with Rule 8, which requires simplicity in pleading, "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that defendant may prepare a responsive pleading." *Id.* at 680. In a Rule 9(b) analysis, the court must keep in mind that a "complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Courts must also be sensitive to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628 (3d Cir.1989) (*citing Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 99–100 (3d Cir.1983)). In particular, in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate management. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987); C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1298 at 416 (1969).

Defendants contend that plaintiffs fail to plead fraud with particularity, and that Fed.

R.Civ.P. 9(b) therefore requires its dismissal. They argue that the federal securities claim failed to state the "who, what, when, where, and how" required for a section 10(b) action. In their motion to dismiss, defendants discussed the following specific areas where, they assert, plaintiffs fail to state their claim with particularity.

## A. Allegations of Fraudulent and Misleading Statements

Defendants argue that plaintiffs have the burden of identifying the "what" or the content of any alleged misrepresentation. *Di-Leo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). They state that plaintiffs fail to identify "what" was said by defendants.

■ Plaintiffs' complaint specifies precisely which of Upjohn's quarterly and annual reports are alleged to have contained material misrepresentations and omissions. Specifically, the complaint alleges, *inter alia*, that the annual reports on Form 10–K for the years ending December 31, 1989 and December 31, 1990 "remained silent as to Halcion's adverse side-effects and improper or inadequate testing and submission to various nations' drug regulatory agencies. Accordingly, defendants' statements were materially misleading because the regulatory agencies were not provided with accurate data from which they could determine whether administrative action was warranted." (Complaint at ¶ 43). The allegations in the complaint also include ¶ 30 (results of testing were submitted by Upjohn to the FDA and regulatory agencies in other countries to seek approval for the drug). *See also* Complaint at ¶¶ 29–74 in general. The complaint also identifies the defendants who allegedly signed each of the periodic reports. (Complaint at ¶ 71). In *Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. 27, 31 (D.Mass.1989), a complaint that specifies the reports that allegedly contain misrepresentations and omissions, that details which of the defendants allegedly signed each of the periodic reports, and that avers that each defendant had reason to know of the falsity of the reports, or acted with reckless disregard as to the truth of the

contents of those reports, was adequate to plead the "time, place and content" of alleged false misrepresentation.

I find that plaintiffs have set forth with sufficient specificity fraudulent conduct on the part of defendants, and have identified the misleading nature of the statements. The court does not deem these allegations as conclusory. In addition, the court does not favor the strict application of Rule 9(b) in complex securities fraud cases, a view shared by the Sixth Circuit. *Michaels Bldg.*, 848 F.2d 674. The complaint is therefore sufficient to withstand a motion for dismissal.

## B. Failure of Plaintiffs to Identify the Role of Each Defendant in the Alleged Fraud

Defendants contend that plaintiffs' complaint must be dismissed for failure to notify each individual defendant separately of the specific acts of which he is accused. *Benoay v. Decker*, 517 F.Supp. 490, 493 (E.D.Mich. 1981), *aff'd*, 735 F.2d 1363 (6th Cir.1984). The complaint alleges that the complaint "lumps all defendants together, regardless of whether the defendant is the corporation, company management, or a director." Motion to Dismiss at 40. In other words, defendants allege that plaintiffs failed to adequately plead the fraud of each individual defendant with particularity.

### 1. The Upjohn Company

■ Upjohn's alleged involvement in the fraud was the issuance of various disclosure documents that contained material misrepresentations and omissions. The complaint alleges that the company, through its officers and directors, knew of the falsity of its own documents, or acted with reckless disregard of the truth of those documents. While the company's knowledge of the misrepresentations and omissions is averred generally, that is all that is required under Rule 9(b). Thus, the company's particular role in the fraud is sufficiently pled.

### 2. The Officers and Directors

Some of the defendants in this action served on the Board of Directors (Cooper, Novitch, Smith), and some were at relevant

times directors of the company (W.U. Parfet, R.T. Parfet, Hoff, Salisbury, and Cyrus). (Complaint at ¶¶ 8–16). The complaint has also pointed to the specific documents these officers and/or directors signed. (Complaint at ¶ 71).

■ Plaintiffs cite a number of cases that find Rule 9(b) to be satisfied when a defendant is identified as a member of class. *See e.g., Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987) (complaint alleging that directors signed corporate documents satisfied particularity requirement); *Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. 27, 31–32 (D.Mass.1989) (as the "First Circuit has not yet considered whether an individual's signature on a corporation's allegedly false disclosure forms is a sufficient nexus to charge that person with fraud," the district court adopts the view that "a person is liable for corporate statements that bear his or her signature.") When the group is allegedly involved in furtherance of a fraudulent scheme, there is no need to allege specific acts of each defendant who participates in the preparation of the documents. *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 593 (E.D.Mich.1985).

The complaint has identified defendants as a group. It further alleges that each of these individual defendants signed one or more of the company's periodic reports alleged to have been false and misleading even though he knew the adverse, non-public information concerning serious undisclosed side-effects of Halcion. The complaint further alleges that each of these individual defendants had access to internal company documents, reports, and other information and attended management and/or board of director and board committee meetings. (Complaint at ¶ 16). By signing the documents, defendants have identified themselves as members of this particular group that made the misrepresentations and omissions that are challenged. Thus, the role of each member of the group in this securities fraud claim is stated with sufficient particularity to satisfy Rule 9(b). *See In re Consumers Power Co.*, 105 F.R.D. at 593. Furthermore, "[w]hen a complaint links a particular individual to a corporate document that he or she signed, and specifies what is fraudulent about that statement, the individual is placed on notice about the nature of plaintiffs' claim and what role that individual is alleged to have played in the fraud. That is all that Rule 9(b) requires." *Hurley*, 719 F.Supp. at 32.

Plaintiffs, having alleged both the signatures and the fraudulent statements made by defendants, have satisfied Rule 9(b). The circumstances of the fraud are pled with enough specificity to afford the defendants notice of the claims against them. *See Michaels Bldg.*, 848 F.2d at 680.

C. Scienter

■ Defendants argue that to satisfy requirements under Rule 9(b) for a section 10(b) and Rule 10b–5 claim, plaintiffs must allege an intent to defraud, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Leoni v. Rogers*, 719 F.Supp. 555, 568 (E.D.Mich.1989). They contend that plaintiffs fail to satisfy this requirement. Considering plaintiffs' complaint and the pleadings in their entirety, I disagree. Rule 9(b) states that in averments of fraud, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Since scienter is a "fact specific" issue, it should normally not be determined on the pleadings. *Klein v. King*, [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,002, at 95603, 1990 U.S.Dist. LEXIS 5392 (N.D.Cal. Mar. 27, 1990). Although under Rule 9(b) a complaint need only aver intent generally, it must nonetheless allege facts which will give rise to a strong inference of a fraudulent intent.

■ Although motive is not required to plead scienter, motive can be a means to establish scienter. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). I am satisfied that plaintiffs have alleged sufficient motive to commit fraud. First, according to the complaint, Halcion is the most widely prescribed sleeping drug on the U.S. market. Its worldwide sale has accounted for approximately 8% of Upjohn's annual revenues. (Complaint at ¶ 7). It may be assumed that the company wishes to maintain the drug's

sales record. Second, Upjohn had approximately 190 million shares of common stock outstanding as of February 28, 1992, held by approximately 32,000 shareholders of record. The company had an interest in keeping the price of the shares high. In my view, plaintiffs have alleged sufficient motive to establish scienter.

Some courts, including the Sixth Circuit, have also interpreted scienter to include recklessness. *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1435 (9th Cir.1984). Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *SEC v. Blavin,* 760 F.2d 706 (6th Cir.1985). An issue of material fact exists as to whether the statements in Upjohn's reports were in fact reckless.

In my view, the amended complaint satisfies the scienter requirement of Rule 9(b). As already discussed, it alleges facts from which one can reasonably infer that the sales of Halcion represent a significant part of Upjohn's business. One can also infer that defendants had knowledge of Protocol 321, which consisted of damaging information concerning the side-effects of the sleeping drug, (Complaint at ¶ 32), and that defendants affirmatively made false misrepresentations before the FDA. (Complaint at ¶¶ 35–39). In light of the strong inference that defendants had knowledge of the side-effects of Halcion during the class action period, the court finds that plaintiffs have alleged sufficient facts from which it can be inferred that defendants had the requisite fraudulent intent. *See Cosmas v. Hassett,* 886 F.2d 8, 12–13 (2d Cir.1989).

## IV. CONTROL PERSON LIABILITY UNDER SECTION 20 OF THE 1934 ACT

Plaintiffs allege violations of section 20 of the Exchange Act against all defendants for the complained-of conduct.

Section 20(a) of the Securities Exchange Act of 1934 permits liability to be derivatively imposed on those who directly or indirectly control primary violators of the securities laws. 15 U.S.C. § 78t(a) [3].

In Count II, ¶¶ 87–89, plaintiffs allege the following:

The individual defendants were the directors and principle [sic] executive officers of Upjohn who had the power to influence, direct and manage the policies, business and affairs of Upjohn during the Class Period and who did, in fact, influence, direct and manage the policies, business and affairs of Upjohn during the Class Period. The individual defendants' actual control of Upjohn is evidenced by the fact that each individual defendant signed one or more of the annual or quarterly reports filed with the SEC alleged to be false and misleading and described in paragraphs 64, 66, 68 and 71 above. For these reasons, the individual defendants are controlling persons of Upjohn within the meaning of Section 20 of the Exchange Act.

Defendants argue that the complaint fails to allege facts that establish a primary violation against any of the individual defendants. Defendants' reasons are the same as those stated in the Rule 9(b) claim, i.e., failure to identify the content of alleged misrepresentation, to identify the role of each defendant, to allege facts showing that identified representations were false, and to allege facts that lead to a strong inference that defendants acted with scienter.

■ As discussed in Rule 9(b) claim, the court has determined otherwise. The court recognizes that a person's status as a director does not alone amount to the requisite

---

**3.** § 78t. Liabilities of controlling persons

(a) Every person who, directly, or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled persons to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indi-

rectly induce the act or acts constituting the violation or cause of action.

(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

power to control. *See Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.1984). Something more must be alleged in order to state a Section 20(a) controlling person claim.

 Based on the complaint in the instant case, the court finds that plaintiffs have properly alleged that named defendants have participated in the company's operation or had some influence. *Holloway v. Howerdd,* 377 F.Supp. 754 (M.D.Tenn.1973), *aff'd,* 536 F.2d 690 (6th Cir.1976). *See also Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981). In addition, plaintiffs have also stated an inference of defendants' culpable participation in the alleged fraud. The culpable participation standard is met when one can "imagine a scenario in which the 'controlling persons' encouraged and permitted the issuance" of statements they knew were false. *In re Par Pharmaceutical, Inc. Sec. Litig.,* 733 F.Supp. 668 (S.D.N.Y.1990) (*citing Hemming v. Alfin Fragrances, Inc.,* 690 F.Supp. 239, 245 (S.D.N.Y.1988)). The court is satisfied that the complaint, read in its entirety, has sufficiently alleged control person liability against defendants.

Defendants' motion to dismiss count II is DENIED.

As in the previous count, "if it appears during the course of discovery that plaintiffs cannot prove their 10b-5 [and the section 20] claims, the court will entertain a timely summary judgment motion." *Mercer v. Jaffe, Snider, Raitt & Heuer, P.C.,* 713 F.Supp. 1019 (W.D.Mich.1989), *aff'd,* 933 F.2d 1008 (6th Cir.1991).

### V. COMMON LAW FRAUD AND DECEIT

 Lastly, defendants argue that the state law claim for common law fraud, Count III of the complaint, should be dismissed. Citing *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976), defendants correctly assert that plaintiffs must prove the following elements:

1) that the defendant made a material misrepresentation;

2) that it was false at the time it was made;

3) that when the defendant made it, defendant either knew it was false or uttered it with reckless disregard for the truth;

4) that defendant made the statement with the intention that plaintiff act upon it;

5) and that plaintiff in fact relied upon it, and

6) thereby suffered injury as a result.

Furthermore, "[e]ach of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Id.* 247 N.W. at 816.

Defendants argue that Michigan requires a plaintiff to plead reliance for a fraud claim. *See Van Marter v. American Fidelity Fire Ins.,* 114 Mich.App. 171, 184, 318 N.W.2d 679, 684 (1982) ("When pleading a claim of fraud, plaintiffs must plead that he acted in reliance on defendant's fraudulent statement.") However, defendants argue that plaintiffs have failed to plead reliance, materiality and loss causation.

In a recent decision by the Supreme Court of Michigan, *Kassab v. Michigan Basic Property Ins.,* 441 Mich. 433, 491 N.W.2d 545 (1992), the Supreme Court affirmed the fraud and misrepresentation claim. The Court ruled that "[r]ead as a whole, the complaint alleges that false representations were made to Kassab before he entered into the contract of insurance with Michigan Basic, and thus that when Michigan Basic entered into the contract of insurance with Kassab and represented that it intended to pay and would pay for fire damage, the representation was false and Michigan Basic knew when it made the representation that it was false.... While Kassab may have difficulty in establishing the allegations, they do state a cause of action." *Id.* at 10–11.

 In the instant case, plaintiffs' complaint alleges that Upjohn's statements contained material omissions. The complaint also alleges that Upjohn made representations to them, that the representations were false, that Upjohn made the representations knowing they were false or with reckless disregard for their truthfulness, that the representations were made with the intention that plaintiffs would rely thereon, and that

they relied on those representations in buying the artificially inflated Upjohn stocks.

I am satisfied that plaintiffs' complaint states the circumstances constituting fraud with particularity pursuant to MCR 2.112(B)(1), and that the complaint states a cause of action. Like the *Kassab* case, whether plaintiffs can establish their allegations is not an issue at this early stage of the litigation.

Defendants' motion to dismiss pendent state law claim is hereby DENIED.